G. Dana Scruggs, Esq.: SBN 096152
CARTWRIGHT, SCRUGGS, FULTON & WALTHER
Attorneys at Law
340 Soquel Avenue, Suite 215
SANTA CRUZ, CALIFORNIA 95062
Telephone: (831) 457-1700
Facsimile: (831) 457-3788

John Burton, Esq.
LAW OFFICES OF JOHN BURTON
414 South Marengo Avenue
Pasadena, CA 91101

Attorneys for: Plaintiff DAVID BUTLER as Conservator of the
Person and Estate of Steve Alan Butler

**F I L E D**

SEP 1 7 2008

ALEX CALVO, CLERK
BY GRACE CRUIT
DEPUTY, SANTA CRUZ COUNTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CRUZ

| | |
|---|---|
| DAVID BUTLER as Conservator of the Person and Estate of Steven Alan Butler<br><br>Plaintiff,<br><br>vs.<br><br>TASER INTERNATIONAL, INC., PROFORCE MARKETING, INC., and DOES 1 through 20, inclusive<br><br>Defendants. | Case No.  **CV 161436**<br><br>**COMPLAINT FOR DAMAGES**<br>  **1.) Negligence**<br>  **2.) Strict Products Liability**<br>  **3.) Intentional Misrepresentation**<br>  **4.) Negligent Misrepresentation**<br>  **5.) Fraudulent Concealment and**<br>     **Deceit**<br><br>**DEMAND FOR JURY TRIAL** |

### PRELIMINARY AND FACTUAL ALLEGATIONS

1.      Plaintiff DAVID BUTLER is the brother and conservator of the person and estate of Steven Alan Butler.  Plaintiff DAVID BUTLER as conservator, has the power and authority to bring this action on behalf of STEVEN ALAN BUTLER (hereinafter "Plaintiff BUTLER") pursuant to the courts orders and letters of conservatorship issued in the conservatorship of David A. Butler, Santa Cruz Superior Court Case No. PR 044132.  At all times herein mentioned, conservator, David A. Butler and conservatee, Steven Alan Butler were residents of Santa Cruz County, California.

-1-
COMPLAINT FOR DAMAGES

EXHIBIT

A

2.      At all times herein mentioned, Defendant TASER International, Inc. (herein after "TASER"), was a Delaware Corporation with its principle place of business in the state of Arizona. As alleged herein, TASER negligently, defectively, and fraudulently designed, manufactured, failed to warn, misrepresented and/or concealed the fact that its 26 watt Electronic Control Devices (herein after "ECD's") were defective and unreasonably dangerous, and as a legal cause of said acts and omissions Steven Alan Butler was repeatedly shocked with a TASER Model X26 ECD causing ventricular fibrillation (herein after "VF"), cardiac arrest, and a hypoxic brain injury which has rendered him incompetent and unable to care for himself.

3.      Defendant PROFORCE MARKETING, INC. (herein after "PROFORCE"), is a corporation with a principle place of business in Brea, California.

4.      Plaintiff BUTLER is ignorant of true names and capacities of those defendants sued herein as DOES 1 through 20, and for that reason had sued such defendants by fictitious names. Plaintiff BUTLER will seek the leave of the court to amend this complaint to identify said defendants when their true names and identities are ascertained. Plaintiff BUTLER is informed and believes, and on that basis alleges, that each of the fictitiously names defendants was in some fashion liable and legally responsible for damages and injuries set forth herein.

5.      In doing the things alleged hereinafter, defendants, and each of them, acted as the agents, servants and employees of their co-defendants, acted within the course and scope of said agency and employment, with the knowledge, consent and approval of the co-defendants, and their conduct was ratified by each of the other co-defendants.

6.      At all times herein mentioned, Defendant TASER was acting through its officers, directors and supervisory managers in performing the acts, omissions, misrepresentations, and concealments of material fact alleged herein. Said officers, directors, and supervisory

managers had knowledge of in advance, ratified, and/or otherwise authorized all of the acts, omissions, misrepresentations and concealments of material fact alleged herein which were the legal cause of the injuries suffered by Plaintiff BUTLER.

7.      Plaintiff is informed and believes that sometime prior to October 2006, Defendant PROFORCE sold the TASER Model X26 ECD which was used on Plaintiff BUTLER to the Watsonville Police Department, and that this contract and the sale of this device to the Watsonville Police Department occurred at Santa Cruz County, California.

8.      On or about October 7, 2006, Plaintiff BUTLER was forty-eight (48) years old, and one hundred and fifty pound (150 lbs.) gentleman with a history of mental illness , who boarded a Santa Cruz Metro bus in Watsonville, California in the daylight hours while under the influence of alcohol and possibly marijuana.  Despite requests by the bus driver to leave the bus, Plaintiff BUTLER sat down on the back bench seat of the bus.  Officers of the Watsonville Police Department were called to the scene in an attempt to remove Plaintiff BUTLER from the bus.  While Plaintiff BUTLER was unarmed and non-violent, he was not compliant with the police officers' requests to leave the bus, and his conduct was erratic, consistent with someone with a history of mental illness who was self-medicating with alcohol.

9.      Plaintiff BUTLER is informed and believes that the Watsonville Police officers at the scene had been trained in the use of the TASER Model X26 ECD by CD, oral and written instruction, training, warnings, and other methods provided directly or indirectly to the Watsonville Police Department by Defendant TASER.

10.     Prior to October 2006, Plaintiff is informed and believes that Defendant TASER had misrepresented, failed to disclose and/or failed to warn the Watsonville Police Department and the officers on the scene of the following material facts, among others:

        (a) Falsely represented that its 26-watt ECDs are not lethal; (*See*, e.g., Version 12 and 13 TASER Training Materials);

(b) Falsely represented that the its 26-watt ECDs cannot cause cardiac arrest; (*See*, e.g., Version 12 and 13 TASER Training Materials);

(c) Falsely represented that its 26-watt ECDs cannot cause ventricular fibrillation; (*See*, e.g., Version 12 and 13 TASER Training Materials);

(d) Falsely represented that a TASER 26-watt ECD can be safely fired at the front center of a suspect's body mass; (*See*, e.g., Version 12 and 13 TASER Training Materials);

(e) Falsely represented that "after initially deploying the TASER X26 upon the suspect a law enforcement officer should be prepared to deliver additional cycles." (See, e.g., Version 13 TASER X26 Certification Test to Watsonville Police Department 07-06-06);

(f) Falsely represented that multiple ECD discharges into a human being presents no greater health risk than a single discharge (*See*, e.g., Watsonville Police Department Less Lethal Force Update 05/11/05);

(g) Falsely represented that a TASER 26-watt ECD may be safely used on suspects under the influence of alcohol and mind altering drugs (*See, e.g.*, Version 13 TASER X26 Certification Test to Watsonville Police Department);

(h) Falsely represented that a TASER 26-watt ECD affects the sensory and motor nervous systems, but cannot affect the cardiac system of a suspect (See, e.g., Version 13 TASER X26 Certification Test to Watsonville Police Department);

(i) Failed to disclose and/or warn that a TASER 26-watt ECD is a potentially lethal device which could cause ventricular fibrillation, cardiac arrest, and hypoxic brain injury as a result;

(j) Failed to disclose and/or warn that the risk of ventricular fibrillation and cardiac

-4-

COMPLAINT FOR DAMAGES

arrest is significantly increased by discharging an ECD in the front chest, near the heart –
especially where the suspect is thin, as was Plaintiff BUTLER – and that law enforcement
including the Watsonville Police Department should endeavor to deploy the ECDs to parts of a
suspects

body other than the front of the chest to minimize or eliminate the risk of cardiac arrest, brain
damage and/or death;

(k) Failed to disclose and/or warn that Watsonville Police Department and other law
enforcement agencies should carry defibrillators in their police vehicles if personnel are armed
with 26-watt ECDs in order to further minimize the risk of brain damage or death in the event
cardiac arrest occurs from ECD use;

(l) Failed to disclose and/or warn that multiple cycles and uses of EDCs on a single
person increased the risk of ventricular fibrillation, cardiac arrest, and the serious potential
consequences which Plaintiff BUTLER suffered.

(m) Falsely represented in Instructor notes to the slide on "the decision to deploy" that
"When used within the design parameters of the device, the TASER is a very effective, non-
lethal, control device," when it is in fact potentially lethal.  (*See*, e.g. Version 12 Training to the
Watsonville Police Department, issued January 2005.)

(n) Falsely represented that "There is no medical evidence that the TASER T-Waves™ in
any way causes or contribute to heart or respiratory failure."  (*See*, e.g. Version 12 Training to
the Watsonville Police Department, issued January 2005.)

(o) Falsely represent, concealed and failed to warn that "TASER applications directly
across the chest may cause sufficient muscle contractions to impair normal breathing patterns.
While this is not a significant concern for short (5 sec) exposure, it may be a more relevant
concern for extended duration applications.  Accordingly, prolonged applications should be

-5-

COMPLAINT FOR DAMAGES

avoided where practicable." There is no mention of the risk of VF, which increases with prolonged exposure and is much more life threatening than temporary impairment of respiration. (*See*, e.g. Version 12 Training to the Watsonville Police Department, issued January 2005.)

(p) TASER falsely trains that officers should "Keep cycle going until suspect restrained," despite the risk of inducing VF if the probes are on the chest. (*See*, e.g. Version 12 Training to the Watsonville Police Department, issued January 2005.)

(q) In TASER's Medical Safety Slide Training Version 12, TASER falsely represented that:

- The ADVANCED TASER M26 was applied directly to the chest of experimental animals without causing heart failure during tests at the University of Missouri;

- Using "worst case" scenarios, cardiac safety experts found no induction by the M26 weapon of abnormal heart rhythms;

- No arrhythmia provocation occurred even when the animals were given the stimulant drugs epinephrine and isoproternol, agents that make the heart more susceptible to electrical stimulation; "there are no lasting after-effects from the electrical current itself." (Instructor notes to slide on "Possible TASER side effects"); and

- "Extensive animal testing has shown effect on heart rhythms or blood pressure to be insignificant." (TASER Technology Medical Safety Slide)

(r) In Version 12 Lesson plan, page 91 (dated 11/04), Defendant TASER falsely misrepresented that: "Unlike aerosol chemical agents, the entire body is effective target zone," and there is no mention of increase VF risk from strikes to the chest; and at page 92, in

connection with one incident, Defendant TASER point out that an officer "Aimed at open front of unzipped jacket."

11.     Plaintiff BUTLER is informed and believes that because of Defendants' tortuous conduct as alleged herein, the Watsonville Police officers at the scene deployed and discharged a TASER Model X26 ECD to the front of Plaintiff BUTLER'S chest with one of the two prongs deployed in close proximity to Plaintiff BUTLER'S heart.  This ECD deployment by the Watsonville Police officers at the scene was done by the officers in a foreseeable manner, and in the manner intended by Defendant TASER.  At all times herein mentioned, the Watsonville Police Department and the officers at the scene were unaware and had been tricked and deceived that their use of the ECD could not cause cardiac arrest by the misrepresentations, concealments of material fact and failures to warn by Defendant TASER described herein above.

12.     The Watsonville Police officers at the scene discharged a TASER Model X26 ECD into Plaintiff BUTLER multiple times.  Plaintiff BUTLER immediately suffered ventricular fibrillation and cardiac arrest.  Plaintiff BUTLER'S heart stopped pumping blood to his brain, and he suffered severe brain injury as a result of a lack of oxygen over a period of a number of minutes.  Eventually, paramedics were called to the scene, and used a defibrillator to restart Plaintiff BUTLER'S heart.

13.     At all times herein mentioned, Defendant TASER was aware and knew or should have known that its 26-watt ECDs are potential lethal devices which could cause direct ventricular fibrillation, cardiac arrest, and brain damage to suspects like Plaintiff BUTLER when it was used by law enforcement in its intended manner.

14.     At all times herein mentioned, Defendant TASER has used its best efforts to avoid performing or encouraging objective medical and scientific studies which would prove the dangerousness and lethality of 26-watt ECDs as described above.  Instead, Defendant TASER

-7-

has ignored the medical and scientific literature, and the opinions of the objective, unbiased medical and scientific community, and has misrepresented and twisted medical and scientific research in order to deceive law enforcement and the general public to increase Defendant TASER'S profits at the expense of serious, permanent injury and death to members of the public.

15.     Plaintiff BUTLER is informed and believes that instead of investing in pre-market and post market objective, unbiased medical and scientific research regarding the dangers of the 26-watt ECDs, Defendant TASER has devoted large sums of money to an intentional and/or false marketing campaign designed to mislead and deceive the general public and the law enforcement community into believing that such weapon systems are non-lethal, and cannot cause ventricular fibrillation or cardiac arrest.

## FIRST CAUSE OF ACTION

### (NEGLIGENCE)

16.     Plaintiff hereby incorporates by reference paragraphs 1 through 15 herein, as if set forth in full.

17.     At all times herein mentioned, Defendants, and each of them, were engaged in the business and profession of designing, manufacturing, selling, distributing, installing, fabricating, assembling, buying, inspecting, testing, servicing, repairing, marketing, warranting, instructed, and advertising 26-watt ECDs  which these defendants knew, or in the exercise of reasonable care should have known, would be used without inspection for defects or dangers in their parts, mechanisms or design.  Defendants' product was unreasonably dangerous and defective for use on human beings because, among other things, it was negligently designed, manufactured, and was sold without warnings of the risks and dangers described herein above.

///

COMPLAINT FOR DAMAGES

18.     At all times herein mentioned, Defendant TASER and the DOE Defendants negligently and carelessly designed, manufactured, sold, distributed, installed, fabricated, assembled, bought, inspected, altered, maintained, serviced, tested, repaired, marketed, warranted, instructed, and advertised their unreasonably dangerous defective product in that Defendant TASER knew or should have known that the device was capable of causing, and did in fact cause, personal injuries and death to persons while being used in a manner reasonably forseeable, thereby rendering the product unsafe and dangerous for its intended use."

19.     Defendant TASER'S Model X26 ECD was the legal cause of Plaintiff BUTLER'S injuries as described above, and Plaintiff BUTLER suffered economic and non-economic damages in an amount to be awarded according to proof.

20.     Plaintiff is informed and believes and thereon allege that Defendants TASER, and said DOE Defendants, acted in a despicable, malicious, oppressive and fraudulent manner, in conscious disregard of the rights and safety of Plaintiff BUTLER, entitling Plaintiff BUTLER to recover exemplary and punitive damages in an amount to be awarded according to proof.

## SECOND CAUSE OF ACTION

### (STRICT PRODUCT LIABILITY)

21.     Plaintiff hereby incorporates by reference paragraphs 1 through 22 herein, as if set forth in full.

22.     Defendants, and each of them, designed, manufactured, sold, distributed, installed, fabricated, assembled, bought, inspected, tested, serviced, marketed, warranted, instructed and advertised the subject device which contained design defects, manufacturing defects and/or defects as a result of a failure to warn which were capable of causing, and in fact did cause, personal injuries to people like Plaintiff BUTLER when used in a manner reasonably foreseeable, thereby rendering TASER ECDs as unsafe and dangerous for their intended use.

23.     As a legal result of the above-described defects in the subject product, Plaintiff BUTLER sustained economic and non-economic damages in an amount to be awarded according to proof.

24.     Plaintiff BUTLER is informed and believes that Defendant TASER and DOES, acted in a despicable, malicious, oppressive and fraudulent manner, in conscious disregard of the rights and safety of Plaintiff BUTLER, then Plaintiff is entitled to exemplary and punitive damages in an amount to be awarded at trial.

### THIRD CAUSE OF ACTION

### (INTENTIONAL MISREPRESENTATION)

25.     Plaintiff hereby incorporates by reference paragraphs 1 through 24 herein, as if set forth in full.

26.     Defendant TASER represented to the Watsonville Police Department all of the material statements set for herein above, including those set forth in paragraph 10.

27.     These representation were in fact false.  Defendant TASER knew that the misrepresentations were false when it made them, and/or made the representations recklessly and without regard for their truth.

28.     Defendant TASER intended that law enforcement agencies such as the Watsonville Police Department rely on the misrepresentation, and in fact, the Watsonville Police Department did rely on these misrepresentations in purchasing, deploying, training, instructing, and otherwise using TASER manufactured ECDs as a law enforcement tool in interacting with members of the public such as Plaintiff BUTLER.

29.     As a legal result of Defendant TASER'S misrepresentations, Plaintiff BUTLER suffered economic and non-economic damages as described above.

-10-

COMPLAINT FOR DAMAGES

30.     Defendant TASER'S intentional misrepresentations were malicious, oppressive and fraudulent, and constituted despicable conduct entitling Plaintiff BUTLER to an award of exemplary and punitive damages in an amount to be awarded according to proof.

## FOURTH CAUSE OF ACTION

### (FRAUDULENT CONCEALMENT AND DECEIT)

31.     Plaintiff hereby incorporates by reference paragraphs 1 through 30 herein, as if set forth in full.

32.     Defendant TASER intentionally failed to disclose to the Watsonville Police Department and other law enforcement agencies material and important facts that were known only to Defendant TASER and could not have been discovered by Watsonville Police Department and other law enforcement agencies, all as described hereinabove.  These important and material facts include, but are not limited to: that its ECDs can be in fact "lethal";  that its ECDs can and do on occasion cause ventricular fibrillation, cardiac arrest, hypoxic brain injury and death; that the risk of ventricular fibrillation and cardiac arrest is significantly decreased if a person is shot with the ECD other than in the front of the chest; that to reduce the risk of brain injury or death from cardiac arrest by an ECD, law enforcement officers who deploy ECDs should carry with them in their vehicles defibrillators or otherwise have defibrillators available. Furthermore, Defendant TASER actively concealed these important material facts from the Watsonville Police Department and other law enforcement agencies, and/or prevented such agencies from discovering these facts.  Instead, Defendant TASER disclosed partial truths about its ECDs but intentionally failed to disclose the important and material facts set forth above.

33.     At all times herein mentioned, the Watsonville Police Department was completely reliant upon Defendant TASER for appropriate warnings, instructions, and the necessary

COMPLAINT FOR DAMAGES

medical and scientific evidence so that officers of Watsonville Police Department could be properly trained and instructed in the use of the ECDs.

34.     The Watsonville Police Department and other law enforcement agencies did not know of the facts concealed by Defendant TASER.

35.     Defendant TASER intended to deceive the Watsonville Police Department, other law enforcement agencies, and the general public, including Plaintiff BUTLER of the true facts. Watsonville Police Department and other law enforcement agencies reasonably relied on Defendant TASER'S deceptions.

36.     As a legal result of Defendant TASER'S concealments, Plaintiff BUTLER suffered economic and non-economic damages in an amount to be awarded according to proof.

37.     Plaintiff is informed and believes and thereon allege that Defendants TASER, and said DOE Defendants, acted in a despicable, malicious, oppressive and fraudulent manner, in conscious disregard of the rights and safety of Plaintiff BUTLER, entitling Plaintiff BUTLER to recover exemplary and punitive damages in an amount to be awarded according to proof.

## FIFTH CAUSE OF ACTION

### (NEGLIGENT MISREPRESENTATION)

38.     Plaintiff hereby incorporates by reference paragraphs 1 through 37 herein, as if set forth in full.

39.     Defendant TASER represented to the Watsonville Police Department and other law enforcement agencies important and material facts described hereinabove.

40.     These important material facts and representations were not true, and Defendant TASER had no reasonable grounds for believing that its representations were true when they were made.

41.     Defendant TASER intended that the Watsonville Police Department, law enforcement agencies and members of the general public, including Plaintiff BUTLER, rely on these representations, and these individuals did in fact reasonably rely on the misrepresentation.

42.     As a legal result of Defendant TASER'S misrepresentations, Plaintiff BUTLER suffered economic and non-economic damages in an amount to be awarded according to proof.

WHEREFORE Plaintiff BUTLER prays for judgment against Defendants, and each of them, as follows:

1.   For economic and non-economic damages in an amount to be awarded according to proof;

2.   For punitive and exemplary damages against Defendant TASER and DOES 1 to 10 in an amount to be awarded according to proof;

3.   For reasonable attorney's fees;

4.   For costs of suit; and

5.   For such other and further relief as the Court deems just and proper.

DATED: September 15, 2008                   CARTWRIGHT, SCRUGGS, FULTON & WALTHER

                                            Attorneys at Law


                                       By: _____
                                            G. Dana Scruggs, Esq.
                                            Attorneys for Plaintiff

-13-
COMPLAINT FOR DAMAGES