# Keep your case in state court: defendants know that litigating in federal court can be costly and time-consuming for plaintiffs. Knowing how to combat removal attempts will ensure timely justice for your client.

**Publication:** Trial  
**Publication Date:** 01-SEP-04  
**Format:** Online



EXHIBIT F

Ads by Google

**Court Reporting Services** Court reporting & legal video depos Professional and certified services

**Court Appearances Covered** Court Appearances Nationwide We'll be there when you can't be.

**Criminal Appeals** Federal Appeals and Habeas Florida Appeals - 904-355-1890

**Full Article**
Plaintiff attorneys' preference for state courts is undisputed and understandable. Reasons for avoiding federal court range from the mundane (greater familiarity with state procedure) to the strategic (greater likelihood of securing justice for clients).

In most states, local judges are elected by the very people whose disputes they will hear, motivating speedy and fair adjudication. Federal judges are appointed for life, and their courts are clogged with criminal cases. The so-called war on drugs has so overburdened the federal judiciary that getting a civil case tried at all in many federal courts is nearly impossible. (1)

To reduce their burgeoning dockets, federal courts have increasingly engaged in stringent control of discovery, aggressive encouragement of settlement, and more frequent granting of summary judgment. (2) As a result, litigation in federal court is more expensive and time-consuming. (3) Moreover, plaintiffs whose cases are removed to federal court are substantially less successful than those who originally the there. (4) Finally, but significantly, lawsuits in federal court are increasingly being consolidated into multidistrict, pretrial litigation proceedings, where they often languish for year. (5)

Defense attorneys are not oblivious to these facts; upon receiving a state court complaint, they frequently search for any conceivable basis to remove the lawsuit to federal court.

Fortunately for the plaintiff bar, federal statutes limit the grounds for removal and establish specific procedures for removal, and they are narrowly construed. Unfortunately, few plaintiff attorneys are familiar with the process, and they ultimately acquiesce to removal attempts that are either invalid on their face or easily opposed.

Federal-question jurisdiction

The general removal statute authorizes removal only if the lawsuit could have been originally filed in federal Court because at least one cause of action arises under federal law (federal-question jurisdiction) or because every plaintiff is a citizen of a different state from every defendant and the amount in controversy exceeds $75,000 (diversity jurisdiction). (6) Courts construe the general removal statute strictly, assuming as true all allegations in the complaint, resolving all factual disputes and ambiguities in the law in favor of remand. (7) As a result, you can often avoid removal simply by drafting your complain t artfully.

Avoid pleading federal causes of action. If you can obtain the recovery you seek under state law, consider limiting your complaint. Plaintiffs have the right to isolate the law under which they seek relief, and courts will not read federal claims into a complaint alleging only state law claims, so long as state law affords a remedy? More often than not, whatever federal remedy exists is also available under state law.

Disclaim federal causes of action. Because removal jurisdiction is determined from the pleadings, ensure that your complain t makes clear that you do not seek relief under federal law. Became of similarities among state and federal causes of action, your pleading of facts may be misinterpreted as a request for federal relief.

A disclaimer of federal causes can avoid such confusion. Courts frequently cite such disclaimers as evidence that a corn plaint does not invoke federal-question jurisdiction in the face of ambiguities in the complaint that the defendants cited? Consider inserting a paragraph like this early in your pleading:

```
Plaintiffs, disclaim any cause of action arising
```

> under the Constitution, treaties, or other
> laws of the United States, including but
> not limited to any claim arising tom an act
> or omission on a federal enclave or by any
> officer of the United States or any agent or
> person acting on behalf of such individual.
> No claim under admiralty or maritime law
> is alleged. To the extent this paragraph conflicts
> with any other allegations herein, this
> paragraph controls.

Upon removal, dismiss the complaint. Removal on any grounds can be circumvented by dismissing the complaint after removal and filing it again in state court, with the basis for removal eliminated. While leave of court is generally required to dismiss or amend a complaint in federal court, a plaintiff has an absolute right to do either before the defendant files all answer. (10)

Savvy, defendants file an answer simultaneously with their notice of removal. However, because answers filed in federal court must address each paragraph of the plaintiff's complaint, some defense attorneys initially file only a notice of removal, saving their answer for another day. In such a situation, you can dismiss your complaint and refile an altered version in state court, if you act quickly.

Seek dismissal of the federal cause of action and move for remand. Assuming the defendant has answered your complaint in a lawsuit that has been removed to federal court, leave of court is required to amend the complaint. Rarely will a court forbid a plaintiff to streamline the litigation by dismissing a claim. Once the court grants a motion to dismiss the federal cause, you should move for remand on the ground that only state law claims remain. Because the suit originated with a federal claim, the court has discretion to retain the case under the doctrine of pendant jurisdiction.

However, federal courts prefer not to preside over state law causes of action alone and have exhibited substantial willingness to remand lawsuits when no federal claims remain in the case. In tact, the Fifth Circuit has held that a district court abuses its discretion by retaining jurisdiction over a lawsuit when all federal claims have been dismissed early in the proceedings. (11)

Argue that federal law does not establish your cause of action. The mere fact that your complaint refers to a federal statute does not mean the claim arises under federal law. Federal-question jurisdiction exists only if federal law creates the cause of action or is an essential element of the claim. (12) If federal law does nothing more than create a standard of care or conduct that is but one element of a cause of action based on state law, no federal jurisdiction exists.

In Howery v. Allstate Insurance Co., the plaintiff alleged bad faith in the handling of an insurance claim, including violations of the Texas Deceptive Trade Practices Act. Nearly three years after filing the original petition, the plaintiff amended it to allege that one of the deceptive practices in which Allstate engaged--obtaining the plaintiff's credit record in a prohibited manner--violated Federal Trade Commission (FTC) rules, regulations, and statutes.

Allstate removed the lawsuit. The district court denied the plaintiff's motion to remand--even after allowing him to amend his complaint to delete reference to federal law--the case was tried, and the plaintiff appealed an adverse judgment.

The Fifth Circuit reversed, finding the reference to FTC rule violations insufficient to establish federal jurisdiction, given that the purported violations were but a subset of a state cause of action and not essential to the claim. (13) If federal law does not actually create the remedy you seek to invoke, but merely provides a standard of conduct for a state cause of action, argue that federal jurisdiction does not exist.

Note that federal law actually prohibits removal. Some federal statutes, while providing civil relief and thus serving as the basis for original federal jurisdiction, do not permit removal of lawsuits from state court, either because they or the general removal statute prohibit it. Among these are the Federal Employers' Liability Act, the Jones Act, mad the Death on the High Seas Act. (14)

Federal law also prohibits removal of claims such as those brought under state workers' compensation laws, those based on domestic violence, certain actions against common carriers, and claims based on domestic relations. (15) Be sure to determine whether federal law restricts removal of your case before conceding to the jurisdiction of a federal court.

Diversity jurisdiction

Plaintiffs can exercise various options in their pleading to avoid diversity of citizenship or the amount-in-controversy requirements of federal diversity jurisdiction.

Sue nondiverse defendants. Plaintiff attorneys too often locus their attention on "target defendants," even

though others may also be liable for their clients' injuries. Often, multiple entities' wrongdoings combine to produce a single injury. These additional wrongdoers may be citizens of the same state as your client. Suing them as well as the "principal tortfeasors" can destroy diversity, eliminating federal jurisdiction.

For instance, if your client was injured by a defective prescription drug, look beyond the manufacturer: The plaintiff's physician may be liable for failing to warn your client of dangers associated with the drug, sales representatives who promoted the drug to the physician may be liable for misrepresenting or concealing its side effects, and even the pharmacy may be strictly liable as an entity in the product's chain of distribution.

If your client was injured by a dangerous condition on premises owned by a foreign defendant, the premises manager may be liable for unreasonably failing to correct the defect, and the premises employees may be liable for creating or failing to correct the defect (particularly if their conduct was intentional).

Courts can ignore claims against nondiverse defendants by ruling on motions to remand only if they conclude these defendants were "fraudulently joined." Fraudulent joinder exists only if the defendant proves, by clear and convincing evidence, that there is "no possibility" the plaintiff could prevail against the defendant. (16) You should therefore consider suing such entities, regardless of whether you anticipate receiving a substantial recovery from them, in order to keep your lawsuit in state court.

Make your allegations specific enough to survive a motion to dismiss for failure to state a claim on which relief can be granted, bearing in mind that the standard for evaluating a claim of fraudulent joinder is even less strict than the standard for evaluating a motion to dismiss. (17) As a practical matter, judges suspicious of your motive for naming certain nondiverse parties may not strictly enforce the "no possibility" standard for fraudulent joinder. Pleading with specificity is therefore recommended.

Keep in mind, however, that suing additional defendants may create substantive problems with your claims against the principal defendant. For instance, if a court ultimately determines that a physician failed to warn of known risks of a drug, or that an intermediate distributor sold a product without warning of risks it knew, your claim against the manufacturer could be harmed by the learned intermediary defense. On the other hand, suing these intermediaries may induce them to be forthright in revealing the manufacturers' concealment of relevant information.

Move for leave to add nondiverse defendants. The general rule is that the propriety of removal is based on the complaint that existed at the time of removal, so moving to add nondiverse defendants offers no guarantee of remand. However, some courts have granted leave to add such parties and remanded cases afterward. (18)

If you learn about nondiverse defendants after removal that should be sued, consider moving for leave to amend your complaint to add the defendants simultaneously with the filing of your motion to remand. Include in the latter motion the argument that, if the motion for leave is granted, diversity of citizenship will no longer exist.

Stipulate that the amount in controversy is less than $75,000. Such a stipulation must be made in good faith. If your client's damages may conceivably be limited to that amount, consider stipulating--with your client's consent--that these are the maximum damages to which he or she is entitled.

Damages, for purposes of evaluating removal jurisdiction, include punitive damages and attorney fees but exclude prejudgment interest and costs. Multiple claims by a single plaintiff are aggregated. However, each plaintiff's claim is considered separately from every other plaintiff's claim, assuming that the plaintiffs maintain separate causes and are not staking claim to the same pool of funds. A stipulation, at the time you file your complaint, that damages for each plaintiff will not exceed $75,000 is automatically assumed true unless the defendant proves to a "legal certainty" that you have fraudulently or incompetently assessed damages. (19)

Avoid dismissing nondiverse defendants for at least one year. The removal statute permits defendants to remove a lawsuit within 30 days of the filing of the first pleading (original or amended) establishing federal jurisdiction. One exception is that no lawsuit not initially removable may be removed on diversity grounds more than a year after its commencement, even if the am ended pleading first establishing federal jurisdiction was filed more than a year after the suit's commencement. (20)

Consider maintaining your causes of action against at least one nondiverse defendant for a full year after filing your original complaint, even though the opportunity for settling with that defendant may arise earlier.

Courts are split on whether the one-year limit is jurisdictional or procedural. (21) If jurisdictional, the provision cannot be disregarded under doctrines of waiver or estoppel. If procedural, the provision can be ignored on equitable grounds.

However, decisions declining to enforce the time limit generally involved egregious acts of forum manipulation by the plaintiff. In one case, the plaintiffs intentionally misrepresented the amount in controversy until the one-year deadline passed. (22) In another case, the plaintiff sued the wrong

nondiverse party, added the correct party very soon after learning of a defendant's intent to remove the lawsuit, and postdated a notice of dismissal of the nondiverse party, waiting to file it until the one-year deadline passed. (23) Such actions are a far cry from simply refraining to settle with or dismiss a defendant before the one-year period has expired.

Consider suing the target defendant in its home state. The provision in the general removal statute that any lawsuit that originally could be filed in federal court may be removed has an important exception: No defendant may remove a lawsuit that is filed in a court of the state in which the defendant is domiciled." Your client can file suit in the defendant's home state and avoid removal, even though your client and the defendant maintain diverse citizenship.

Many plaintiff attorneys assume that a corporate defendant will have an advantage in its home state. You may be surprised to learn how many prominent companies are not well received by many or a majority of citizens in their home states.

Further, you can sue a company in the state of its incorporation, in addition to the state of its principal place of business, because both states are deemed its domicile for diversity purposes?" Corporations rarely have a home-field advantage in their state of incorporation, where they often have few ties.

Procedural defects in a removal notice

Even if federal jurisdiction is present, defects in the procedure by which removal is attempted provide grounds for remand.

Exploit the 30-day time limit for removal. A defendant has 30 days from the time it receives a copy of the complaint "through service or otherwise" in which to effect removal. (26) Some defendants miss the deadline because of simple errors, such as assuming that they filed a timely notice of removal if they mailed it to the court on the deadline date. While state rules often deem the date of filing to be the date of mailing, federal courts do not consider a document filed until it is received by the district clerk. (27) Check the file-stamped date on any notice of removal to determine whether it was filed on time.

Defendants often mistakenly believe that a stipulation by or agreement with plaintiff counsel to extend the deadline for answering a lawsuit will extend the deadline for filing a notice of removal. However, the removal deadline is statutory and cannot be extended by stipulation. (25) If you expressly agree to an extension of time for removing a lawsuit, the court may film that you have waived your right in assert the untimeliness of removal, but agreeing to extend the time lot filing an answer does not waive the deadline.

In the past, plaintiffs often sent a courtesy copy of their lawsuit to the defendant (or; if the defendant was a corporation, to a principal of the company such as a chief executive officer) before the lawsuit was served through formal channels, arguing that the courtesy copy started the timetable for removal. This was based on the removal statute's statement that the 30-day period begins when the defendant receives a copy of the complaint "through service or otherwise." The U.S. Supreme Court recently all but foreclosed this option when it held that the removal timetable does not begin until the defendant is formally a party to the lawsuit--that is, after it has been served with process. (29)

Capitalize on the requirement of unanimous consent by defendants. All defendants must expressly consent to removal of a lawsuit. (30) Exceptions exist for defendants who are deemed fraudulently joined and defendants not yet served. You should seek remand if a stipulation or other written document of consent to removal by any nonremoving defendant is not on file with the court by the deadline for removal.

The requirement of consent, coupled with the 30-day time limit for removal, can permit the plaintiff to "stagger" service to thwart removal. You should consider serving the defendant you deem least likely to remove the lawsuit first, serving other defendants thereafter in the order of their expected likelihood not to seek removal. Most courts follow the "first served" rule for calculating the start of the 30-day removal time limit. (31)

Once the first-served defendant answers the lawsuit, or its 30-day period to remove has expired, no subsequently served defendant can remove the suit. The principal rationale for this rule is that the first-served defendant's act of answering the state case or failing to timely remove demonstrates its lack of consent to removal--and there must be a definite time limit for removal. (32) In lawsuits involving many defendants, staggered service can become a nearly insurmountable burden to defendants hoping to remove the lawsuit.

Cite defects in the form and content of the notice of removal. the defendant must file with the district court a notice of removal containing a "short and plain statement" of the basis for removal, along with copies of all state court processes, pleadings, and orders. (33) If the grounds stated in the notice do not establish a genuine basis for removal, or if the notice is not accompanied by" all mandatory state court documents, at the very least argue that the removal is procedurally defective.

Advise your client to incorporate in his or her contracts forum selection clauses that require state court litigation. Defendants may be deemed to have waived their right to remove lawsuits by consenting to

contractual provisions requiring that disputes be resolved in state court. (34) You should encourage clients to insist on a clause in contracts (such as settlement agreements) mandating that all disputes regarding the agreement be heard by the courts of a particular state.

The right to litigate in state court

There are two principal procedural grounds oil which an otherwise meritorious motion to remand maybe denied: untimeliness and waiver.

File any motion to remand based on procedural defects within 30 days of removal. Federal law requires that a motion to remand based on procedural defects in removal be filed within 30 days of the filing of the notice of removal. (35) Plaintiff attorneys occasionally fall to comply with this deadline in two ways.

First, they mistakenly forget that, because the deadline is statutory, extensions of time afforded by the rules of procedure are not available. The deadline is calculated from the date the notice of removal is fried, not the date it is served. You are not entitled to a three-day extension of the deadline pursuant to the mail rule.

Second, like defense attorneys, plaintiff lawyers often forget that documents are not deemed filed in federal court until received. Ensure that your motion to remand is in the district clerk's office--not merely in the mail--30 days after the notice of removal was filed.

A common misperception is that all motions to remand must be filed within 30 days of removal, but that deadline governs only motions based on procedural-removal defects. A motion to remand based on lack of subject matter jurisdiction may be filed at any time because challenges to subject matter jurisdiction cannot be waived. The law states that a court must remand all action "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." (36) You are free to file a motion to remand on substantive grounds at ally time during the litigation.

File your motion to remand before seeking any other relief. Any act demonstrating "unequivocal assent" to federal jurisdiction waives your right to seek remand. Courts are divided as to what constitutes waiver; with some courts concluding that even the filing of all amended complaint or the serving of discovery requests can be deemed a waiver. (37) Your best option is to file your motion to remand before taking any other action.

Once the motion is filed, you are free to prosecute your claims. Indeed, you are obliged to do so, because a pending motion to remand does not stay the litigation. Several months may pass before the court rules on your motion.

Avoid making substantial changes to your state court complaint. Amending a state court complaint to include new causes of action, or substantially altering your allegations in another way, may revive the defendant's opportunity to remove the lawsuit.

The rationale is that the defendant may have had no objection to your original claims being tried in state court but may desire federal disposition of your amended claims. (38) Unless significant changes are necessary to protect your client's interests, avoid such amendments to your state court complaint.

Attorney fees and costs

In a case of improvident removal, the removal statute provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (39) This provision does not require a finding of bad faith or fraudulent conduct, as pro visions for sanctions typically do.

Consider filing a motion in recoup the fees you incurred in drafting and arguing your motion to remand. Under the right circumstances, the threat of such an award may motivate a defendant to agree to remand.

Statutory restrictions on removal--and the federal judiciary's commitment to construe those statutes narrowly--afford plaintiffs ample avenues to keep their cases in state court. To ensure justice for their clients, plaintiff attorneys should always draft state court complaints with the goal of thwarting removal before it happens.

Notes

(1.) Abner J. Mikva, It's Time to "Unfix" the Criminal Justice System, 20 HASTINGS CONST. L.Q. 825, 829 (1993).

(2.) See Jonathan T. Molot, An Old Judicial Role for a New Litigation Era, 113 YALE L.J. 27, 39-41 (2003).

(3.) See Gregory M. Cesarano & Daniel R. Vega, So You Thought a Remand Was Imminent? Post-Removal Litigation and the Waiver of the Right to Seek Remand Ground on Removal Defects, 74 FLA.

B.J. 22, 23-24 (2000).

(4.) The success rate for plaintiffs whose cases are filed in federal court is 57.9 percent; for plaintiffs whose cases are removed, is 36.7 percent. See Kevin M. Clermont & Theodore Eisenberg, Do Case Outcomes Really Reveal Anything About the Legal System? Win Rates and Removal Jurisdiction, 83 CORNELL L. REV. 581,592 (1998).

(5.) See Gary Wilson et al., The Future of Products Liability in America, 27 WM. MITCHELL L. REV. 85,104 (2000).

(6.) See 28 U.S.C. [sub section] 1441, 1331-32 (1995).

(7.) See, e.g., Willy v. Coastal Corp., 855 F.2d 1160, 1163-64 (5th Cir. 1988).

(8.) Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 & n.7 (1987). Even though a claim might fit under a federal statute, as long as state law likewise affords relief, courts will respect the plaintiff's choice of law. See Willy, 855 F.2d 1160, 1167.

(9.) See, e.g., Lott v. Nationscredit Fin. Servs. Corp., No. 4:03GV102, 2004 WL 741681, at *3 (N.D. Miss. Feb. 5, 2004); Petty v. GuffGuar. Ins. Co., 303 F. Supp. 2d 815, 818 & n.3 (N.D. Miss. 2003); Caldwell v. Am. Home Plod. Corp., 210 F. Supp. 2d 809, 811 (S.D. Miss. 2002).

(10.) FED. R. CIV. P. 41 (a) (1).

(11.) See Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 587-90 (5th Cir. 1992); see also Robertson v. Neuromedical Ctr., 161 F.3d 292, 296 (5th Cir. 1998) (per curium) (affirming remand when summary judgment granted on federal claims), cert. denied, 526 U.S. 1098 (1999).

(12.) See Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 817 (1986).

(13.) Howery v. Allstate Ins. Co., 243 F.3d 912, 918 (5th Cir.), cert. denied, 534 U.S. 993 (2001).

(14.) 28 U.S.C. [section] 1445(a) (1995); 46 U.S.C. App. [section] 688; Zaini v. Shell Oil Co., 853 F. Supp. 960, 964 (S.D. Tex. 1994).

(15.) See 28 U.S.C. [section] 1445(c) (1995) (workers' compensation); 28 U.S.C. [section] 1445(d) (1995) (domestic violence); 28 U.S.C. [section] 1445 (b) (1995) (carriers, unless amount in controversy exceeds $10,000); Csibi v. Fastos, 670 F.2d 134, 136-37 (9th Cir. 1982) (domestic relations).

(16.) See, e.g., Burden v. Gen. Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995); Triggs V. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

(17.) See Batoff v. State Farm Ins. Co., 977 F.2d 848,852 (3d Cir. 1992); Little v. Purdue Pharma, 227 F. Supp. 2d 838, 846-47 (S.D. Ohio 2002) (both comparing standards for fraudulent joinder and Rule 12(b)(6) motions).

(18.) See Sharp v. Kmart Corp., 991 F. Supp. 519, 527 (M.D. La. 1998); Duck v. Gresham-McPherson Oil Co., 999 F. Supp. 848, 851 (S.D. Miss. 1998).

(19.) See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

(20.) 28 U.S.C. [section] 1446(b) (1995).

(21.) See, e.g., Barnes v. Westinghouse Elec. Corp., 962 F.2d 513, 516 (5th Cir.) (procedural), cert. denied, 506 U.S. 999 (1992); Ariel Land Owners, Inc. v. Dring, 245 F. Supp. 2d 589, 600-01 (M.D. Pa. 2003) (jurisdictional); Green Point Sav. Bank v. Hidalgo, 910 F. Supp. 89, 92 (E.D.N.Y. 1995) (jurisdictional).

(22.) See Morrison v. Nat'l Beneficial Life Ins. Co., 889 F. Supp. 945, 950 (S.D. Miss. 1995).

(23.) See Tedford v. Warner-Lambert Co., 327 F.3d 423, 427-28 (5th Cir. 2003).

(24.) See 28 U.S.C. [section] 1441 (b) (1995).

(25.) See 28 U.S.C. [section] 1332 (c) (1) (1995). Lawsuits brought in the courts of the state of incorporation or of the company's principal place of business cannot be removed. See, e.g., Co-Efficient Energy Sys. v. CSL Indus., 812 F.2d 556, 559 (9th Cir. 1987).

(26.) 28 U.S.C. [section] 1446(b) (1995). A defendant waives its right to removal if it fails to comply with this deadline. Goldberg v. CPC Int'l, Inc., 495 F. Supp. 233, 236 (N.D. Cal. 1980). (27.) See FED. R. CIV. R 5(e).

(28.) See Ortiz v. Gen. Motors Acceptance Corp., 583 F. Supp. 526, 531 (N.D. Ill. 1984).

(29.) See Murphy Bros., Inc. v. Michetti Pipe Stringing, In e., 526 U.S. 344,356 (1999). At least one court has held that service of a summons generally describing the claims against the defendant begins the timetable, even if the defendant has not yet received a copy of the complaint. See, e.g., Brooklyn Hosp. Ctr. v. Diversified Info. Tech., Inc., 133 F. Supp. 2d 197, 203 (E.D.N.Y. 2001).

(30.) See, e.g., Doe v. Kerwood, 969 F.2d 165, 168 (5th Cir. 1992) ; Hewitt v. City of Stanton, 798 F.2d 1230, 1232 (9th Cir. 1986) (per curiam).

(31.) See McAnally Enters. v. McAnally, 107 F. Supp. 2d 1223, 1226-28 (C.D. Cal. 2000) (discussing majority rule and courts upholding same); But see, e.g., Marano Enters. v. Z-Teca Rest., L. P., 254 F.3d 753, 756 (8th Cir. 2001); Briely v. Alusuisse Flexible Packaging Inc., 184 F.3d 527,533 (6th Cir. 1999), cert. denied, 528 U.S. 1076 (2000); (both holding that later-served defendants have 30 days from date they were served to remove).

(32.) See McAnally Enters., 107 F. Supp. 2d 1223, 1227; we also United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756,762 (9th Cir. 2002). At least one prominent federal judge, in his comprehensive treatise on federal pretrial practice, has suggested this strategy for plaint(Its. See DAVID HITTNER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL [section] 2:612 (2003).

(33.) 28 U.S.C. [section] 1446(a) (1995).

(34.) Pelleport Investors, Inc. v. Budco Quality Theatres, Inc. 741 F.2d 273, 279-80 (9th Cir. 1984); Mfg. & Mktg. Concepts, Inc. v. S. Cal. Carbide, 920 F. Supp. 116, 119 (N.D. Ill. 1996) (finding reference to an "Illinois court" in a contract means a state court of Illinois).

(35.) 28 U.S.C. [section] 1447(c) (1995).

(36.) Id.

(37.) See Maybruck v. Hairn, 290 F. Supp. 721, 723-24 (S.D.N.Y. 1968) (citations omitted).

(38.) See Garden Homes, Inc. v. Mason, 143 F. Supp. 144, 145 (D. Mass. 1956).

(39.) 28 U.S.C. [section] 1447(c) (1995).

ERIK B. WALKER practices law at Hissey, Kientz & Herron in Houston.